UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 14-344 (1) (JRT/FLN) |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER ON REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| v. | |
| SIENEMAH TERRANCE GAYE, | |
| Defendant. | |

Lola Velazquez-Aguilu and Amber M. Brennan, Assistant United States Attorneys, **UNITED STATES ATTORNEY'S OFFICE,** 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for plaintiff.

John C. Brink, **ATTORNEY AT LAW**, 310 Fourth Avenue South, Suite 1008, Minneapolis, MN 55415, for defendant.

On October 21, 2014, Defendant Sienemah Gaye ("Gaye") was indicted by a grand jury for twenty counts of bank fraud, one count of aggravated identity theft, and one count of conspiracy to commit bank fraud, all in violation of 18 U.S.C. §§ 2, 1028A, 1344, 1349. (Indictment ¶¶ 13-25, Oct. 21, 2014, Docket No. 1.) The indictment alleges that Gaye was a member of a counterfeit check operation, acting as one of the manufacturers of the counterfeit checks. (*Id.* ¶¶ 3-12.)

On June 11, 2015, United States Magistrate Judge Franklin L. Noel issued a Report and Recommendation ("R&R") on various pretrial motions. (R&R, June 11, 2015, Docket No. 629.) In particular, the R&R recommended granting Gaye's motion to suppress certain statements that he made to police, but also recommended denying six

other motions filed by Gaye to suppress evidence. These motions stemmed in part from the execution of various search warrants and the seizure of assorted evidence on September 11, 2013. Before the Court are Gaye's objections to the R&R. (Objections to R&R ("Objections"), July 9, 2015, Docket No. 659.) Because probable cause or the good-faith exception to the exclusionary rule supports each of the search warrants Gaye challenges, the Court will deny his motions to suppress various searches. Moreover, because the identification methods used by law enforcement were not impermissibly suggestive or did not create a substantial risk of misidentification, the Court will deny Gaye's motion to suppress identification evidence. The Court will deny Gaye's other suppression motions as moot.

**DISCUSSION**

**I.  STANDARD OF REVIEW**

Upon the filing of a report and recommendation by a magistrate judge, a party may "serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *accord* D. Minn. LR 72.2(b). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). "The objections should specify the portions of the magistrate judge's report and recommendation to which objections are made and provide a basis for those objections." *Mayer v. Walvatne*, No. 07-1958, 2008 WL 4527774, at *2 (D. Minn. Sept. 28, 2008). Objections which are not specific but merely repeat arguments presented to and considered by a magistrate judge are not

entitled to *de novo* review, but rather are reviewed for clear error. *See, e.g.*, *Martinez v. Astrue*, No. 10-5863, 2011 WL 4974445, at *3 (E.D. Pa. Oct. 19, 2011) (citing cases from numerous other jurisdictions); Fed. R. Civ. P. 72 advisory committee's note, subd. (b) ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.").

## II.   GAYE'S OBJECTIONS TO THE REPORT AND RECOMMENDATION[1]

### A.   Motion to Suppress Evidence from Searches and Seizures (Docket No. 400)

In his motion to suppress search and seizure evidence, Gaye argues that evidence derived from searches and seizures of his person and property on September 11, 2013

---

[1] The R&R noted that, in addition to the suppression motions analyzed in the R&R, Gaye had also filed motions to suppress electronic surveillance, (Mot. to Suppress Wire Interceptions, Electronic Surveillance, & Other Evidence, May 16, 2015, Docket No. 398), fruits of warrantless garbage searches, (Mot. to Suppress Fruits of Warrantless Garbage Searches, May 16, 2015, Docket No. 401), and camera surveillance, (Mot. to Suppress Fruits of Warrantless Camera Surveillance at Def.'s Residence, May 16, 2015, Docket No. 402). (R&R at 3 n.4.) The R&R also stated that at the hearing on the motions, "Gaye's counsel informed the Court that such motions were either moot or withdrawn." (*Id.*; *see also* Tr. of Pretrial Mots. Hr'g at 92-93, May 1, 2015, Docket No. 585.) Accordingly, the R&R recommended that the Court dismiss the motions. (*Id.* at 3 n.4, 35.)

The attorney who indicated that those three motions were either moot or withdrawn has since withdrawn from representing Gaye. (Order for Appointment of Substitute Counsel, May 27, 2015, Docket No. 619.) Gaye now has a new attorney. (*Id.*) In the conclusion to his objections, Gaye now appears to reverse course, stating that he objects to the recommended denial of these three motions. Gaye does not explain, however, why the Court should ignore his earlier decision to withdraw all three motions. Nor does he provide any additional support, either factual or legal, for why the Court should grant these motions. While the Court understands that a new attorney might have a different perspective on these issues than a previous attorney, it will not conclude that the Magistrate Judge's recommendation is erroneous without some argument or explanation. Indeed, given that non-specific or generic objections only warrant clear error review of the Magistrate Judge's R&R, *see, e.g.*, *Walker v. Vaughan*, 216 F. Supp. 2d 290, 292 (S.D.N.Y. 2002), Gaye has not shown that the R&R was clearly erroneous. In sum, the Court will overrule Gaye's objections to the R&R's recommendations as to these three motions and will consequently deny each of them.

should be suppressed under the exclusionary rule, because law enforcement officials lacked probable cause to support the search warrants that authorized the searches and seizures. (Mot. to Suppress Search & Seizure Evidence, Mar. 16, 2014, Docket No. 400.) Gaye now objects to the R&R's recommendation to deny this suppression motion. (Objections at 1-2.)

The exclusionary rule prohibits the prosecution from using evidence obtained in violation of the Fourth Amendment's protection against unreasonable searches and seizures. *See United States v. Calandra*, 414 U.S. 338, 347 (1974). "The Fourth Amendment requires a showing of probable cause before a search warrant may be issued." *United States v. Williams*, 477 F.3d 554, 557 (8th Cir. 2007). In other words, the evidence may be excluded (i.e., suppressed) if it was obtained without probable cause (i.e., the warrant authorizing a search or seizure was not supported by probable cause). *Illinois v. Gates*, 462 U.S. 213, 217 (1983); *see also* Fed. R. Crim. P. 41(d)(1). To establish probable cause, a search warrant affidavit must allow for a "practical, common sense" determination that there is a "fair probability" that contraband or similar evidence will be found at the targeted location. *Gates*, 462 U.S. at 238. Where the affidavit is based on information provided by an informant, "the informant's reliability, veracity, and basis of knowledge are relevant considerations – but not independent, essential elements – in finding probable cause." *United States v. Reivich*, 793 F.2d 957, 959 (8th Cir. 1986).

Even when probable cause does not support a warrant application, the Court may still deny a suppression motion based on the good-faith exception to the exclusionary rule. The good-faith exception prevents suppression of otherwise illegally obtained

evidence where officers "reasonably rel[ied] on a warrant issued by a detached and neutral magistrate," which "leads to the conclusion that such evidence should be admissible in the prosecution's case in chief." *United States v. Leon*, 468 U.S. 897, 913 (1984). An officer may not reasonably rely on a warrant in the following four situations:

> (1) the officer included information in the affidavit [that] he knew was false or would have known was false except for his reckless disregard of the truth; (2) the affidavit is so lacking in probable cause that it is objectively unreasonable for the officer to rely on it; (3) the judge failed to act in a neutral and detached manner; or (4) the warrant is so facially deficient that the officer cannot reasonably presume the warrant to be valid.

*United States v. Phillips*, 88 F.3d 582, 586 (8th Cir. 1996) (internal quotation marks omitted).

Specifically, Gaye objects to the R&R's recommendation to deny his motion to suppress evidence stemming from searches of his 2003 Pontiac Grand Prix, 1993 Chevrolet Tahoe, residence, person and belongings, and iPhone. (Objections at 1-2.) Gaye argues that these searches were unlawful because probable cause does not support the warrant applications. Gaye also claims that the warrants are so facially deficient that it was objectively unreasonable for the officers executing the warrants to rely on them.

First, Gaye offers only conclusory and generic objections to the R&R's recommendation as to this suppression motion; as a result, the Court need only apply clear error review. (Objections at 1); *see, e.g.*, *Walker v. Vaughan*, 216 F. Supp. 2d 290, 292 (S.D.N.Y. 2002). However, even under *de novo* review, the Court concludes that the warrants at issue were supported by probable cause or, at a minimum, benefit from the good-faith exception.

In its warrant applications for each of the warrants listed above, the government submitted the same sworn affidavit of United States Secret Service Special Agent Ryan Arnold. (*See, e.g.*, Government Ex. 1 ("Arnold Aff.") at SW_559-13_DOC_00000027-sw_559-13_DOC_00000073.) The affidavit asserts, among other things, that the Minnesota Financial Crimes Task Force ("MNFCTF") interviewed a target of a bank fraud investigation in September 2010, during which the interviewee revealed to law enforcement officials that Gaye was manufacturing counterfeit checks and distributing them to others within a fraud network. (*Id.* ¶ 8.) The MNFCTF subsequently interviewed other informants, who similarly reported that Gaye was a key manufacturer in a counterfeit check scheme being carried out in the Minneapolis and St. Paul metropolitan area. (*Id.* ¶ 10.) In addition to the statements made to investigators by informants, members of the MNFCTF recovered trash from Gaye's residence which contained discarded checks in the midst of mail addressed to Gaye. (*Id.* ¶ 11.) Investigators also conducted surveillance of Gaye's residence in Anoka, Minnesota, where they observed members of the alleged conspiracy coming and going. (*Id.* ¶¶ 13, 17, 18, 21, 28.) Gaye was additionally surveilled moving a printer and laptop computer bag to various locations. (*Id.* ¶ 13.) MNFCTF agents also routinely observed the 1993 Tahoe and 2003 Grand Prix at Gaye's residence, discovering they were registered to his girlfriend. (*Id.* ¶¶ 28, 36, 37.) The agents observed those vehicles being used by Gaye in the course of the conspiracy. (*Id.*) Indeed, the MNFCTF observed Gaye committing bank fraud in the 1993 Tahoe. (*Id.* ¶ 36.) The Court finds that these facts, along with others asserted in Special Agent Arnold's affidavit – which were the product of a lengthy

and thorough investigation of Gaye's activities spanning multiple years – sufficiently establish probable cause to support the warrants for Gaye's vehicles, residence, and person executed on September 11, 2013.

As for Gaye's iPhone, the government also submitted an additional sworn affidavit from Special Agent Arnold explaining why the additional search warrant was necessary to examine the contents of Gaye's cellular phone. (Government Ex. 5 ("Supplemental Arnold Aff.") at SW_219_00000004-SW_219_00000018.) The affidavit asserts that previously obtained electronic devices belonging to different members of the alleged conspiracy included evidence of the fraud conspiracy. (*Id.* ¶ 11.) Additionally, those phones contained contact information of different members of the ongoing check fraud investigation, which are relevant to the investigation. (*Id.* ¶¶ 11-14.) The affidavit also asserts that observations made throughout the investigation make it very likely that his iPhone was used to contact other members of the conspiracy, and would likely contain evidence relevant to criminal activity. (*Id.*) Finally, the affidavit details that the iPhone was seized from a car that was tied to the conspiracy and had been searched pursuant to a valid search warrant. (*Id.* ¶ 20.) Based on these facts, and the remainder of the affidavit and warrant application, the Court finds that the affidavit sufficiently established probable cause to support the search warrant for the iPhone.

Finally, as to all of the warrants discussed above, this Court agrees with the R&R's conclusion that even if the warrant applications did lack probable cause, the evidence from the searches would nevertheless be admissible under the good-faith exception to the exclusionary rule. Here, the searches of Gaye's vehicles, residence,

person, and iPhone were all authorized by warrants issued by a detached and neutral magistrate judge. Those warrants were supported by an affidavit that recounts a lengthy and detailed investigation. Gaye offers no legal arguments or factual allegations to support his contention that the warrants were so facially deficient that it was objectively unreasonable for the executing officers to rely on them. *Phillips*, 88 F.3d at 586. In sum, the Court will overrule Gaye's objections to the R&R's recommendation to deny Gaye's motion to suppress evidence from searches of Gaye's vehicles, residence, person, and iPhone. The Court will deny the motion.

B.   **Motion to Suppress Evidence Gathered Via GPS Tracking Device**
     (Docket No. 408)

Gaye challenges two search warrants authorizing law enforcement officers to attach GPS tracking devices to the 1993 Tahoe and 2003 Grand Prix. (Mot. to Suppress Automobile Tracking Evidence, Mar. 16, 2015, Docket No. 408.) He now objects to the R&R's recommendation to deny his motion to suppress the GPS tracking information. (Objections at 2.)

Attaching a tracking device to a car and using that device to monitor the target's movements constitutes a search under the Fourth Amendment, and therefore requires the government to obtain a search warrant in order to legally monitor a person's activities via tracking device. *See United States v. Jones*, 132 S. Ct. 945, 948-49 (2012); *see also* Fed. R. Crim. P. 41(e)(2)(C) ("A tracking-device warrant must identify the person or property to be tracked, designate the magistrate judge to whom it must be returned, and specify a

reasonable length of time that the device may be used. The time must not exceed 45 days from the date the warrant was issued.").

On July 10, 2013, the Magistrate Judge approved the initial warrants for tracking devices to be attached to the two vehicles and monitored for a period of 45 days. (Government Ex. 6 ("2003 Grand Prix Warrant & Appl.") at SW_460_DOC_00000001-SW_460_DOC_00000019; Government Ex. 7 ("1993 Tahoe Warrant & Appl.") at SW_459_DOC_00000001-SW_459_DOC_00000019.) In the application for the warrants, the government provided details regarding the ongoing alleged check fraud scheme, explained Gaye's role in the scheme as check manufacturer, tied Gaye to the two vehicles, and articulated how the vehicles were used in the scheme. (*See, e.g.*, 1993 Tahoe Warrant & Appl. at SW_459_DOC_00000010-SW_459_DOC_00000018.) The government also explained that the automobile tracking device was necessary because it could be used to provide valuable information about the comings and goings of the alleged co-conspirators, and could also provide information helpful to locating financial documents. (*Id.*)

On August 23, 2013, these warrants were extended to provide the government with an additional 45 days to monitor Gaye's activities using the tracking devices. (Government Ex. 19 at SW_460_DOC_00000020-SW_460_DOC_00000035; Government Ex. 20 at SW_459_DOC_00000020-SW_459_DOC_00000035.) "The court may, for good cause, grant one or more extensions for a reasonable period not to exceed 45 days each." Fed. R. Crim. P. 41(e)(2)(C). To show good cause, the government indicated in its application for an extension that it had monitored and tracked

the subject vehicles going to and from different banks and to the residences of alleged participants in the counterfeit check writing scheme.

Based on the information contained in the initial warrant applications and the extension applications, the Court concludes that the warrants were supported by probable cause. Moreover, the government benefits from the good-faith exception to the exclusionary rule. *Phillips*, 88 F.3d at 586. Here again, Gaye offers no support for his contention that the warrants were facially invalid and that reliance on them was consequently unreasonable. The Court will overrule Gaye's objections to the R&R's recommendation to deny this suppression motion and, consequently, the Court will deny the motion.

### C. Motion to Suppress Identification Evidence (Docket No. 532)

Gaye also seeks to suppress the identifications made of him by Jeffrey Gbor, Felisha Hassim, Johnson Sayonkon, Kaela Lewis, Confidential Informant ("CI") 13-233, CI 12-1446, and David Remme, arguing that suggestive procedures were used to obtain each identification.[2] (Mot. to Suppress Identification Evidence, Mar. 20, 3015, Docket No. 532; *see also* Gaye Mem. for Suppression of Identification Evidence, May 22, 2015,

---

[2] As the R&R notes, to the extent the motion to suppress identification evidence, or the subsequent hearing, discussed the identifications of Gaye by Adolphus Cornormia and Kezia Walker, Gaye has since indicated that he does not challenge Walker's identification and the prosecution has affirmatively stated that it will not call Cornormia. (R&R at 25 n.9.) The R&R consequently recommends that Gaye's motion to suppress identification evidence be denied, to the extent it relates to these two witnesses. (*Id.*) Gaye does not appear to object to this recommendation. As a result, the Court will deny the motion as to these witnesses.

Docket No. 615.) Gaye now objects to the R&R's recommendation to deny this motion. (Objections at 2-3.)

As the Supreme Court has stated, "convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). When a defendant raises such a claim, the Court must first "analyze whether the pre-trial identification procedure was suggestive and unnecessary." *United States v. Omar*, 786 F.3d 1104, 1108 (8th Cir. 2015). If it was, the Court next asks "whether the identification technique created a substantial likelihood of misidentification." *Id.* (internal quotation marks omitted).

### 1. Photobook Identifications

Gaye objects to the R&R's conclusion that identifications made by Gbor, Hassim, Sayonkon, Lewis, and CI 13-233[3] using a photobook were not impermissibly suggestive. (Objections at 2.) Gaye equates the photobook to a single-photo display, which was deemed impermissibly suggestive in *Ruff v. Wyrick*, 709 F.2d 1219, 1220 n.2 (8th Cir. 1983) ("We agree that the single photographic display is unnecessarily suggestive, especially in a case such as this one in which the witness has independently identified the perpetrator."); *see also id.* at 1220 (affirming the district court's determination, however,

---

[3] Gaye also asserts that both CI 12-1446 and Remme made identifications using some sort of photobook. (Objections at 2.) It appears, however, that neither CI 12-1446 nor Remme made identifications using a photobook. (*See* R&R at 18-25, 30, 32-35.) Also, although in this objection Gaye uses the term "CI 14-1446," the Court assumes Gaye is referring to CI 12-1446.

that while the single-photograph identification was impermissibly suggestive, there was not a "substantial likelihood of misidentification"). Gaye also objects to the R&R's determination that since no emergency required using an identification method other than six-pack photo spreads, using the photobook was unnecessary. Gaye explicitly states that he makes his objection notwithstanding Eighth Circuit precedent. *See Omar*, 786 F.3d at 1108-10 (concluding that showing a witness a **series** of one-person photographs was not analogous to an impermissibly suggestive single-photo display).

Here again, Gaye's objections are short and generic, and merely restate, in a conclusory fashion, arguments made to and rejected by the Magistrate Judge. (Objections at 2.) As such, Gaye's objections on this motion are only entitled to clear error review. *Walker*, 216 F. Supp. 2d at 292. Irrespective of which standard the Court applies, however, the Court will overrule Gaye's objections as to the photobook identification method. The two photobooks at issue – one with 71-90 large photos, displayed with one photo to a page, used with Gbor, Hassim, Sayonkon, and Lewis; another with 36 photos, displayed one to a page, used with CI 13-233, (Government Exs. 21, 34) – were not impermissibly suggestive, especially given that no suggestive questions or statements were made during the procedure. This procedure is largely identical to the procedure used in *Omar*: showing witnesses a series of single-person headshots and asking them if they know any of the people in the headshots. *Omar*, 785 F.3d at 1108-10.

The Eighth Circuit held that this procedure was not impermissibly suggestive and was not analogous to the single-photo display in *Ruff*. *Id.* Although Gaye cites *Ruff*, and

asserts his objection despite the decision in *Omar*, he offers no explanation as to why this case is different than *Omar*, or the same as *Ruff*. In sum, under either *de novo* or clear error review, the Court concludes the photobook identification method used with Gbor, Hassim, Sayonkon, Lewis, and CI 13-233 was not impermissibly suggestive and, consequently, will overrule Gaye's objection to the R&R's recommendation to dismiss the motion to suppress those identifications.

      **2.    Identifications Made Using a Facebook Photo and Three ATM Photos**

Gaye also objects to the R&R's recommendation to deny his motion to suppress identifications of him made by CI 13-233 from one photo from the social media website Facebook and from three ATM photos. (Objections at 2-3.) He argues that because there was little evidence of any interaction between CI 13-233 and Gaye, the identification was not reliable and the procedure created a substantial likelihood of misidentification.

To the extent Gaye might argue that the CI 13-233 identification procedure using Facebook and ATM photos was suggestive, the record shows otherwise. Law enforcement officials interviewed CI 13-233 four times between November 2012 and February 2013. In the final two interviews, in January and February 2013, government agents merely asked CI 13-233 whether he recognized the person in the Facebook and ATM photos and – each time – CI 13-233 correctly identified Gaye. (Tr. of Pretrial Mots. Hr'g ("May 6 Hr'g") at 94-95, June 16, 2015, Docket No. 634; Tr. of Pretrial Mots. Hr'g ("May 13 Hr'g") at 55-62, June 29, 2015, Docket No. 652.). The Eighth Circuit has concluded that this sort of single-photo identification procedure, when the

agent only asks whether the witness can identify the person or people in the photo, is not impermissibly suggestive. *United States v. Bissonette*, 164 F.3d 1143, 1145-46 (8th Cir. 1999). Similarly, the Eighth Circuit has approved showing a witness a surveillance photo of a target. *United States v. Casper*, 679 F.2d 136, 137 (8th Cir. 1982). Gaye does not distinguish this case from *Bissonette* and *Casper* and does not explain what aspect of this procedure was impermissibly suggestive. The Court concludes that it was not.

In addition, Gaye does not offer any support for his argument that there was little or no evidence of personal interaction between CI 13-233 and Gaye. On the contrary, CI 13-233 told the government about his frequent interactions with Gaye, and law enforcement officials observed him interacting with Gaye on multiple occasions. (May 6 Hr'g at 94-95; May 13 Hr'g at 75.) Thus, the record shows that CI 13-233 and Gaye did have a close enough relationship to make CI 13-233's identification reliable and to eliminate any risk of misidentification; Gaye offers no evidence or substantive arguments to the contrary. Consequently, the Court will overrule Gaye's objection to the R&R's recommendation to dismiss this aspect of the suppression motion.

### 3. Identifications Made Using a Single Driver's License Photo and a Twitter Photo of Several Persons

Gaye next objects to the R&R's conclusion that CI 12-1446's identification of Gaye from a driver's license photo and Twitter photo were not impermissibly suggestive. (Objections at 3.) Gaye implies that during this procedure, the government impermissibly suggested to CI 12-1446 that someone was to be identified in the picture, irrespective of the person-to-be-identified's name. But the record does not support his

argument. Instead, the record shows that CI 12-1446 was shown both photos and asked, generally, whether he knew the person or people in the photo. (May 13 Hr'g at 21-29.) No suggestion was made that CI 12-1446 should know someone in the photos, or that he needed to make some sort of identification. As discussed above, Eighth Circuit precedent has found that this sort of identification procedure is not impermissibly suggestive. *Bissonette*, 164 F.3d at 1145-46. Moreover, Gaye offers no reason why the identification would be unreliable or the procedure would create a risk of misidentification, given CI 12-1446's statements about his relationship with Gaye, his ability to identify Gaye's vehicle, and the fact that he frequently traveled to Gaye's house to obtain counterfeit checks. (May 13 Hr'g at 22.) Consequently, the Court will overrule Gaye's objection as to this aspect of this suppression motion.

### 4. Additional Driver's License Identification

Finally, Gaye objects to the R&R's conclusion that Remme's identification of him was not obtained pursuant to suggestive means and was reliable. (Objections at 3.) For the reasons discussed above, the Court will also overrule this objection. Showing Remme a single photo, and asking an open-ended question, is not unduly suggestive. *Bissonette*, 164 F.3d at 1145-46. Moreover, even if it were, the record shows that Remme had a relationship with Gaye, and that Gaye was at Remme's house on multiple occasions. (May 6 Hr'g at 30-32.) Consequently, Remme would be able to identify him. Thus, nothing in the record indicates that Remme's identification was unreliable or that the procedure created a substantial risk of misidentification. As a result, the Court will

also overrule this objection and will deny Gaye's entire motion to suppress identification evidence.

### III.   MOTION TO SUPPRESS STATEMENTS (Docket No. 399)

Gaye filed a motion to suppress the statements he made to law enforcement when they executed various search warrants on September 11, 2013.  (Mot. to Suppress Statements, Mar. 16, 2015, Docket No. 399.)  The R&R recommended granting that motion, concluding that Gaye was in custody at the time he made the statements and did not receive the necessary warning under *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).  (R&R at 3-9.)  Since then, in a July 9, 2015 letter, the prosecution has affirmatively stated that it has decided not to use Gaye's statement at trial.  (Prosecution Letter Regarding Gaye's Mot. to Suppress Statement, Aug. 6, 2015, Docket No. 678.)  As a result, the Court will modify the R&R as to this motion and deny the motion as moot.

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, the Court **OVERRULES** Gaye's objections [Docket No. 659], and **ADOPTS in part** and **MODIFIES in part** the Report and Recommendation of the Magistrate Judge [Docket No. 629].  **IT IS HEREBY ORDERED** that:

1.   Gaye's motion to suppress statements [Docket No. 399] is **DENIED as moot**.

2.   Gaye's motion to suppress search and seizure evidence [Docket No. 400] is **DENIED**.

3. Gaye's motion to suppress evidence gathered by means of automobile tracking devices [Docket No. 408] is **DENIED**.

4. To the extent Gaye's motion to suppress identification evidence [Docket No. 532] seeks to suppress identifications made by Jeffrey Gbor, Felisha Hassim, Johnson Sayonkon, Kaela Lewis, David Remme, CI 13-223, and CI 12-1446, the motion is **DENIED**. To the extent Gaye's motion seeks to suppress identifications made by Kezia Walker and Adolphus Cornormia, the motion is **DENIED as moot**.

5. Gaye's motions to suppress electronic surveillance [Docket No. 398], to suppress fruits of warrantless garbage searches [Docket No. 401], and to suppress camera surveillance [Docket No. 402], are **DENIED as moot**.

DATED: December 14, 2015  
at Minneapolis, Minnesota.

                                                          s/ John R. Tunheim  
                                                          JOHN R. TUNHEIM  
                                                             Chief Judge  
                                                      United States District Court